No. 25-4249

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

NEETA THAKUR, et al.,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-4737

## REPLY IN SUPPORT OF
## MOTION FOR PARTIAL STAY PENDING APPEAL

BRETT A. SHUMATE
   *Assistant Attorney General*

YAAKOV M. ROTH
   *Principal Deputy Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
DEREK WEISS
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7230*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 616-5365*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................1

I. The Equity Termination Class Is Not Likely to Prevail. .........................2

II. The Form Termination Class Is Not Likely to Prevail Either. ...............4

III. The Remaining Factors Favor a Stay. ................................................... 10

CONCLUSION ............................................................................................... 13

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
 570 U.S. 205 (2013) ................................................................................ 2, 3

*American Pub. Health Ass'n v. National Insts. of Health*,
 2025 WL 2017106 (1st Cir. July 18, 2025) ................................................ 6

*American Med. Ass'n v. Reno*,
 57 F.3d 1129 (D.C. Cir. 1995) .................................................................. 8

*Bennett v. New Jersey*,
 470 U.S. 632 (1985) .................................................................................. 7

*Block v. Community Nutrition Inst.*,
 467 U.S. 340 (1984) .................................................................................. 7

*Board of Regents of Univ. of Wis. Sys. v. Southworth*
 529 U.S. 217 (2000) .................................................................................. 2

*Bowen v. Massachusetts*,
 487 U.S. 879 (1988) .................................................................................. 6

*City of Los Angeles v. Lyons,*
 461 U.S. 95, 105 (1983) .......................................................................... 10

*Columbus Reg'l Hosp v. United States*,
 990 F.3d 1330 (Fed. Cir. 2021) ................................................................. 7

*Community Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*,
 137 F.4th 932 (9th Cir. 2025) ................................................................ 5, 6

*Department of Educ. v. California,*
 145 S. Ct. 966 (2025) ................................................................ 1, 5, 7, 10

*Labrador v. Poe*,
 144 S. Ct. 921 (2024) .............................................................................. 11

*Lincoln v. Vigil*,
 508 U.S. 182 (1993) .................................................................................. 8

*Megapulse, Inc. v. Lewis*,
 672 F.2d 959 (D.C. Cir. 1982) .................................................................. 5

*National Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998) .................................................................................. 2, 3

*North Star Alaska v. United States*,
   14 F.3d 36 (9th Cir. 1994) ............................................................................. 6

*Parsons v. Ryan*,
   949 F.3d 443 (9th Cir. 2020) ......................................................................... 4

*Regan v. Taxation With Representation of Washington*,
   461 U.S. 540 (1983) .................................................................................. 2, 3

*Rust v. Sullivan*,
   500 U.S. 173 (1991) ........................................................................................ 2

*Sustainability Inst. v. Trump*,
   2025 WL 1587100 (4th Cir. June 5, 2025) ................................................... 6

*Trump v. CASA, Inc.*,
   606 U.S. ___ , 2025 WL 1773631 (U.S. June 27, 2025) ........................ 9, 10

*United Aeronautical Corp. v. U.S. Air Force*,
   80 F.4th 1017 (9th Cir. 2023) ........................................................................ 5

*Vera Inst. of Just. v. U.S. Dep't of Just.*,
   2025 WL 1865160 (D.D.C. July 7, 2025) ...................................................... 6

**Statutes:**

20 U.S.C. § 956(c) ................................................................................................. 4

# INTRODUCTION

Plaintiffs' defenses of the district court's injunction do not withstand scrutiny. The court held that the First Amendment barred the government from terminating research grants on disfavored topics, but decisions based on the grants' content are clearly within the government's authority when acting as patron rather than regulator. Plaintiffs invoke viewpoint neutrality principles, but applying that doctrine to federal grant decisions would flout Supreme Court precedent and have far-reaching, adverse consequences.

The court also held that the agencies violated the APA by failing to provide sufficient explanation for their terminations. That theory cannot be reconciled with multiple Supreme Court decisions. Only by unreasonably narrow readings of these precedents can plaintiffs explain why the *wrong* court could order the *wrong* relief to the *wrong* plaintiffs based on alleged shortcomings in unreviewable agency action.

The equities are "squarely controlled" by the Supreme Court's decision in *California*, which "inform[s] how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 2025 WL 2056889 (U.S. July 23, 2025). This Court should partially stay the order here for the same reasons: Otherwise, the federal fisc will suffer unrecoverable loss, while plaintiffs' harm is reparable later.

# ARGUMENT

In their opposition, plaintiffs frequently jump back and forth between their different claims, classes, and theories, often ignoring the actual arguments that the

government made as to each. Taken methodically, however, all of their claims fail under established precedent.

## I. The Equity Termination Class Is Not Likely to Prevail.

<u>First Amendment.</u> The Supreme Court has made clear that governments have significant flexibility when acting as patron to subsidize speech, as opposed to when regulating it as sovereign. *See, e.g.*, *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 549 (1983); *National Endowment for the Arts v. Finley*, 524 U.S. 569, 587-88 (1998).

In contrast to these precedents and the clear rule they articulate, plaintiffs insist (at 19-21) that even government funding must be viewpoint neutral. But the cases on which they rely involve funding that is generally available to all comers, not selective grant programs like the one at issue here. In *Board of Regents of University of Wisconsin System v. Southworth*, for example, the governmental defendant had "disclaimed that the speech [was] its own," so the Court applied "public forum" principles and held that the school "may not prefer some viewpoints to others." 529 U.S. 217, 229-30, 233 (2000). That principle has no application when the government decides to "selectively fund a program." *Finley*, 524 U.S. at 588 (quoting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)). In the latter context, the relevant cases make clear that the government can decline or terminate funding based on how the money will be spent, even if it could not terminate based on what researchers do "on their own time and dime." *Agency for*

*Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 206 (2013) (*AID*). Otherwise, funding anti-drug programs would require funding programs advocating illegal drug use—a proposition plaintiffs never reject or attempt to distinguish.

Nor is there any logic to plaintiffs' suggestion (at 18-19) that grant *terminations* must be viewpoint neutral even if original grant *funding* need not be. They cite no cases for this extraordinary proposition, which finds no support in First Amendment law or common sense. If the government was entitled to award grants because it wished to subsidize the grants' viewpoints, there is no constitutional basis to prevent the government from terminating them if it no longer wishes to do so (even assuming that terminating grants on particular topics is properly treated as viewpoint rather than content discrimination).

Finally, plaintiffs' misplaced reliance (at 20-21) on *AID* highlights their misunderstanding about when limits on speech become coercive so as to "aim at the suppression of dangerous ideas." *Finley*, 524 U.S. at 587 (quoting *Regan*, 461 U.S. at 550) (alteration adopted). They tilt (at 21) at a strawman position that the government could "terminate any grant if the grantee criticized the President or took any position the President disagreed with." But the applicable limiting principle is clear from *AID*: The government can terminate funding *based on the content of the grant*, even if it cannot do so based on speech "on [individuals'] own time and dime." 570 U.S. at 206. This

3

is not a case about the researchers' speech outside the funded program. *See* A18. The First Amendment therefore did not bar the terminations.

<u>NEH Statute.</u> For this class, the district court also found a statutory violation, but NEH's decision to terminate a grant about the "history of Istanbul's Orthodox Christian communities in the final Ottoman century," Dkt. 7-1, at 28, has nothing to do with 20 U.S.C. § 956(c)'s instructions to award grants that "reflect the diversity and richness of our American cultural heritage, including the culture of, a minority, inner city, rural, or tribal community" or to "give particular regard to scholars, and educational and cultural institutions, that have traditionally been underrepresented." 20 U.S.C. § 956(c)(4), (10).

Plaintiffs' responses (at 15-16) are cryptic. At bottom, their argument appears to be that because the word "diversity" appears in 20 U.S.C. § 956(c)(4), NEH is forbidden from terminating grants that implicate "diversity" in any of its facets. That atextual interpretation is patently absurd.[1]

## II. The Form Termination Class Is Not Likely to Prevail Either.

The Form Termination Class's APA claims fail for four independently sufficient reasons. Plaintiffs fail to persuasively respond to any of these errors, much

---

[1] In a footnote (at 15 n.4), plaintiffs identify (but do not elaborate on) three potential alternative bases to affirm. This is "inadequate briefing" to preserve these arguments. *Parsons v. Ryan*, 949 F.3d 443, 455 n.2 (9th Cir. 2020).

less all of them. They repeatedly pivot back (at 7, 17) to their constitutional claims, but those meritless claims cannot somehow save these defective ones.

Tucker Act. The Tucker Act impliedly precludes the claims plaintiffs bring here. Claims asserting a breach or termination of a contract must be pursued in the Court of Federal Claims, not recharacterized as "arbitrary and capricious" agency action to avoid the jurisdictional and remedial limits that Congress has imposed. Plaintiffs' three responses miss the mark.

*First*, the Supreme Court in *Department of Education v. California* rejected plaintiffs' argument (at 6-8) that claims seeking reinstatement of a contract based on allegations that its termination was arbitrary and capricious are actually not contract claims. 145 S. Ct. 966 (2025). This conclusion is reinforced by the *Megapulse* line of cases—including *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1025 (9th Cir. 2023)—which recognize the Tucker Act cannot be so easily avoided. Otherwise, every "claim," even those "falling … squarely within the Tucker Act" could be reframed "to involve … agency error subject to review under the APA." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 n.34 (D.C. Cir. 1982). Plaintiffs have no answer to this point.

Plaintiffs' reliance on this Court's decision in *Community Legal Services in East Palo Alto v. United States Department of Health & Human Services*, 137 F.4th 932 (9th Cir. 2025), is misplaced. The claims there did not allege arbitrary and capricious action in

violation of the APA. Rather, the plaintiffs invoked substantive statutory and regulatory provisions that allegedly required the government to fund legal services for unaccompanied alien children. *Id.* at 938. The Form Termination Class points to no comparable substantive provisions. Thus, even if *CLSEPA* was correct on its own terms, it provides no basis for plaintiffs' contention that they can bring APA claims asserting that contract terminations were done arbitrarily and capriciously. Again, if the Tucker Act impliedly precludes anything, it is this.

Plaintiffs also point to a First Circuit decision issued last week. *American Pub. Health Ass'n v. National Insts. of Health*, 2025 WL 2017106 (1st Cir. July 18, 2025). This decision, however, suffers from the same flaws as the First Circuit's *California* decision, and the government is seeking Supreme Court review. The First Circuit continues to misconceive the issue as whether the APA exclusion of "money damages" prevents these suits, when the real problem is whether these are contract suits impliedly precluded by the Tucker Act. *See* Motion 14-15. As this Court has recognized, the primary case on which the First Circuit relies, *Bowen v. Massachusetts*, 487 U.S. 879 (1988), "did not involve a contract" and is irrelevant to the latter, *Megapulse* implied-preclusion question. *See North Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir. 1994). And plaintiffs ignore the other courts that have reached the opposite, correct conclusion. *See, e.g.*, *Sustainability Inst. v. Trump*, 2025 WL 1587100

6

(4th Cir. June 5, 2025); *Vera Inst. of Just. v. U.S. Dep't of Just.*, 2025 WL 1865160, at *7-14 (D.D.C. July 7, 2025).

*Second*, plaintiffs claim (at 8-10) they are unable to obtain the relief they seek in the Court of Federal Claims. But the APA's carveout does not turn on the existence of a venue where *this* plaintiff can obtain *this* relief; it depends on whether another statute impliedly precludes the claim. The Tucker Act can altogether preclude suits by certain plaintiffs, in certain venues, or seeking certain remedies. Nobody disputes that even though grant recipients cannot obtain equitable relief on a contract claim in the Court of Federal Claims, the Tucker Act still precludes seeking that relief in district court. At bottom, plaintiffs' position is that even though the Tucker Act would preclude grant recipients from bringing *these exact APA claims*, it nonetheless allows more attenuated parties to bring identical APA claims. That proposition is patently untenable. *See Block v. Community Nutrition Inst.*, 467 U.S. 340, 345-47 (1984).

*Finally*, plaintiffs deny (at 9-10) that grants are contracts, but overwhelming authority (including *California* itself, which also involved grants) is to the contrary. *See also Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (noting that "many … federal grant programs" are "much in the nature of a contract"); *Columbus Reg'l Hosp v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) ("[W]e have followed our predecessor court in treating federal grant agreements as contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound.").

7

Agency Discretion. Federal agencies have largely unreviewable authority to terminate funding agreements that no longer serve the government's interests. *See Lincoln v. Vigil*, 508 U.S. 182, 185-93 (1993). That precludes APA review too. *Id.*

Plaintiffs misread the caselaw to argue (at 17) that courts can vacate agency decisions within *Lincoln*'s ambit for lack of "reasoned decisionmaking." That is *exactly* what *Lincoln* forbids. The case they cite, *American Med. Ass'n v. Reno*, 57 F.3d 1129, 1134-35 (D.C. Cir. 1995), does not remotely hint to the contrary. It confirms the unavailability "of substantive judicial review" but merely says this is "*distinct* from" an ability to review compliance with statutorily mandated notice-and-comment procedures. *Id.* at 1134.

Plaintiffs' alternative argument (at 17) that these grants fall outside *Lincoln*'s ambit because they "are not challenging … discretionary funding decisions" is baffling. That is exactly what they are doing. Focusing, as plaintiffs do, on the fact that these are *terminations* does not distinguish this case from *Lincoln*, which also involved a program termination. 508 U.S. at 194.

APA Merits. As plaintiffs' own cases acknowledge, the extent of "judicial review may … affect the type of information and level of detail required," which "'will vary with the statutory authority invoked and the context of the situation presented.'" *American Med. Ass'n*, 57 F.3d at 1134. The extent of explanation was ample in light of the government's significant discretion in operating grant programs.

Finally, our motion explained (at 22) that any purported reliance interests were unreasonable in light of the clear statements that grants could be terminated based on changed agency priorities. Plaintiffs (at 13-15) entirely ignore this problem and make no attempt to explain why *reasonable* reliance interests were nonetheless created.

Scope of Relief. Because plaintiffs are not the grant recipients, their alleged injuries stem from only that portion of the grants for which the grant recipients have not found or provided alternative funding (and are not likely to do so). Plaintiffs fail to show that at least one class member has standing to seek full reinstatement of each grant covered by the injunction; it is thus at a minimum overbroad. *Trump v. CASA, Inc.*, 606 U.S. ___, 2025 WL 1773631, at *15 (U.S. June 27, 2025).

Plaintiffs' fact-intensive response (at 11-12) that only *part* of Thakur and Foreman's terminated funds were replaced is insufficient to justify an injunction requiring full reinstatement of the grants, and only underscores their inability to prove standing on a class-wide basis without a grant-by-grant inquiry. Indeed, plaintiffs seem to concede (at 11) they would lack standing if any plaintiff had "replaced 100% of the terminated funds." But that concession is fatal to their class-wide relief. We simply cannot know whether any grant to an absent class member had 100% of the terminated funds replaced.

Plaintiffs' pivot to "reputational harm" and the "opportunity cost of seeking alternative funding" does not cure these problems. The alleged reputational harm

9

stems from a funding shortfall leading to an inability to complete research, and plaintiffs fail to explain how injunctions that covered the whole *shortfall* (but not the whole *grant*) would nonetheless impose reputational harm. Further, plaintiffs cannot prove—on a class-wide basis—that *every* class member will prospectively spend time seeking alternative funds. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Moreover, if their employer is paying them the same amount while they solicit funds as they receive while doing research, this does not even allege an injury at all.

### III. The Remaining Factors Favor a Stay.

The balance of harms and public interest overwhelmingly favor a stay pending appeal. Money will be paid while the appeal is pending and the government will likely never recover those funds. *See California*, 145 S. Ct. at 969. That harm is exacerbated by the injunctions' improper interference with the President's control over Executive Branch policies. *See CASA, Inc.*, 2025 WL 1773631, at *14. Just yesterday, the Supreme Court reiterated that its stay decisions "inform how a court should exercise its equitable discretion in like cases"; accordingly, the Supreme Court's balancing of the equities (just like its jurisdictional determination) "squarely control[s]" here. *Boyle*, 2025 WL 2056889.

Plaintiffs' responses are meritless. Their suggestion (at 23) that funds might not be drawn is implausible and undermined by their own argument, in the next paragraph, that they will be harmed if they need to wait until after "litigation to

10

receive the funds." Plaintiffs have more information than defendants about the pace at which funds will be withdrawn, and their own filing shows they intend to withdraw funds during litigation.

Plaintiffs also question (at 21-22) why the NSF is not seeking a stay. It does not reflect any uncertainty about the government's position that, having been subject to an erroneous requirement to reinstate grants, NSF elected not to use its resources to terminate them again while the appeal unfolds. *Cf. Labrador v. Poe*, 144 S. Ct. 921, 925 (2024) (Gorsuch, J., concurring in grant of stay) ("Do we really want to incentivize parties to seek more sweeping relief in order to enhance their chances of success in this Court?"). Rather, the government's narrower request, tailored to the particular injuries it seeks to immediately redress, stands in stark contrast to the district court's sweeping, indiscriminate injunction requiring reinstatement of countless grants without any showing of harm related to those grants.[2]

Finally, plaintiffs argue (at 22) that the separation-of-powers concerns are minimal because "Congress—not the President—controls the purse." But it is the

---

[2] Plaintiffs criticize (at 3) the government for seeking a stay 13 business days after the injunction, and for not requesting emergency relief under Circuit Rule 27-3. The district court's decision to limit the initial injunction to three agencies but contemplate expanding the injunction raised complicated choices for the defendants about how to proceed, delaying the decision whether to seek a stay. While defendants believe they have irreparable harm every day, *see* Motion 22-24, this Court should encourage (not punish) decisions to allow plaintiffs reasonable amounts of time to respond to stay motions and to allow this Court adequate time to review the motion.

President—not a district court judge—who controls the Executive Branch. It is not being forced to disburse "congressionally appropriated funds" that imposes harm on the agencies, but rather being forced to fund programs they have decided are no longer in the public interest—and thereby being stripped of the discretion Congress vested in them.

## CONCLUSION

For the foregoing reasons, the Court should grant a stay pending appeal insofar as the preliminary injunction relates to the NEH and the EPA.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY

*s/ Derek Weiss*
DEREK WEISS
*Attorneys, Appellate Staff*
*Civil Division, Room 7320*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-5365*
*derek.l.weiss@usdoj.gov*

July 2025

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Ninth Circuit Rules 32-3 and 27-1(1)(d) because it contains 2,793 words. This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.

                                                 *s/ Derek Weiss*
                                               Derek Weiss