

**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW
Washington, DC 20530

Tel: (202) 616-5365

August 4, 2025

VIA CM/ECF

Molly C. Dwyer
Clerk of Court
The James R. Browning Courthouse
95 7th Street
San Francisco, CA 94103

     RE:   *Thakur v. Trump*, No. 25-4249

Dear Ms. Dwyer:

     We write in response to Plaintiffs' letter notifying the Court that the National Science Foundation (NSF) has suspended its grants to UCLA. This is completely irrelevant to the government's pending motion.

     Most fundamentally, because NSF did not seek a stay of the district court's injunction pending appeal, NSF's recent grant suspensions have nothing to do with the motion now before this Court. Nor is there any inconsistency between NSF's actions and counsel's representations. As our stay motion explained (at 6 n.1), and counsel reiterated at argument, NSF did not seek a stay of the injunction because it does not want, during the pendency of this appeal, "to re-terminate the grants" that the district court ordered reinstated. That remains true. As NSF advised the district court this afternoon, it "has not suspended any grants" that had been "reinstated" pursuant to the preliminary injunction. Dkt. 79, at 4.

     Of course, Plaintiffs are free to raise with the district court any argument that the recent suspensions run afoul of the preliminary injunction. But, as NSF has already advised the district court, Plaintiffs are wrong. The injunction is doubly inapplicable. For one, it applies to *terminations*, not *suspensions*, which are materially different as a matter of both law and fact. For another, the injunction forbids only terminations that are (1) "pursuant to Executive Orders 14151 or 14173" or (2) "communicated by means of a form termination notice that does not provide a grant-specific explanation" and does not account for reliance. Dkt.

55, at 2. The UCLA suspensions, however, were based on "race discrimination," "antisemitism," and "bias" (not the Executive Orders), and the letters provide a specific, tailored explanation and reflect that the agency considered reliance. In all events, this is a dispute for the district court to address in the first instance.

      Finally, Plaintiffs object that the UCLA grant suspensions "were effected without notice, hearing, or findings of fact." Nothing in "the Constitution" or "federal law" requires any of that before the government suspends or terminates a contract. Plaintiffs' sweeping yet legally groundless arguments only underscore why a stay pending appeal is warranted.

Sincerely,

*/s/ Derek Weiss*
Derek Weiss
Counsel for Appellants

cc:         All counsel (via CM/ECF)

Enclosed:   Dkt. 79: Defendant NSF's Submission Regarding Suspension of NSF Grants To UCLA

Word Count: 349

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
KATHRYN BARRAGAN (D.C. Bar No. 90026294)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Email: kathryn.e.barragan@usdoj.gov
JASON ALTABET (Md. Bar No. 2211280012)
Trial Attorney, U.S. Department of Justice
Tel.: (202) 305-0727
Email: Jason.k.altabet2@usdoj.gov

*Attorneys for United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEETA THAKUR, *et al.*, | Case No. 25-cv-4737-RFL |
| Plaintiffs, | **DEFENDANT NSF'S SUBMISSION REGARDING SUSPENSION OF NSF GRANTS TO UCLA** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | Judge: Hon. Rita F. Lin |
| Defendants. | |

## INTRODUCTION

Defendant National Science Foundation ("NSF") files this notice to advise the Court as to its views on a contested question regarding the preliminary injunction issued in this matter and its explanation of why it remains in compliance with this Court's injunction.

The Court's preliminary injunction prospectively applies to "future grant terminations by Agency Defendants meeting the . . . criteria" set out for the Equity Termination Class and Form Termination Class portions of the injunction. Preliminary Injunction ¶ 5, ECF No. 55. If a future (meaning post-injunction) grant termination falls within the criteria set out in the injunction, and the termination is as to a member of the two classes, then the agency must not "giv[e] effect" to the termination, and the agency must reinstate and restore any terminated grant. *Id.* ¶¶ 2b, 2c, 4b, 4c, 5.

Last week, NSF suspended some grants to the University of California - Los Angeles ("UCLA") after findings by the Department of Justice that UCLA violated federal civil rights law.[1] The two suspension letters made detailed factual findings specific to UCLA and informed the institution that NSF was willing to work with UCLA to resolve these concerns and facilitate corrective action. NSF respectfully submits that this action does not fall within the prospective portion of the Court's injunction. First, it is a suspension, not a grant termination. A suspension is materially different than a termination—it does not unequivocally end the grant but rather suspends it while providing the grantee with an opportunity to respond to NSF's articulated concerns. Nor, in any event, do the suspension letters meet the criteria set out in the Equity Termination Class or Form Termination Class portions of the injunction. The suspension does not fall within the Equity Termination Class because NSF did not rely on the DEI-based content of any grant pursuant to Executive Orders 14151 or 14173. The Form Termination Class is not implicated because the letters state in detail the reason for the change to the original award decision based on conduct specific to the grantee, and the letters explicitly consider reliance interests. *See* Ex. A (Suspension Letter); Ex. B (Supplemental Letter).

---

[1] The Department of Justice's July 29 press release is located at https://www.justice.gov/opa/pr/justice-department-finds-university-california-los-angeles-violation-federal-civil-rights (last visited Aug. 4, 2025).

DEFENDANT NSF'S SUBMISSION REGARDING SUSPENSION OF NSF GRANTS TO UCLA
CASE NO. 25-CV-4737

1    To be clear, if the Court rules that the injunction applies, NSF will not "giv[e] effect" to the
2    suspension and will otherwise ensure compliance as the Court advises. But NSF respectfully submits that
3    the prospective portion of the preliminary injunction does not apply to NSF's suspension action.

4                                               **BACKGROUND**

5    *Factual Background*

6    In two letters issued last week, NSF suspended some UCLA grants because it determined that
7    UCLA had violated federal civil rights laws. In NSF's first letter, dated July 30, 2025, the agency informed
8    Dr. Julio Frenk, the Chancellor at UCLA, that NSF would be suspending various grants between the
9    agency and UCLA. Suspension Letter at 1. NSF explained that this suspension was due to NSF's
10   understanding that UCLA "continues to engage in race discrimination including in its admissions process,
11   and in other areas of student life" and is "failing to promote a research environment free of antisemitism
12   and bias." *Id.* at 1. NSF further explained that it had "considered reliance interests and they are outweighed
13   by the NSF's policy concerns." *Id.* NSF concluded that "the awards no longer effectuate program goals or
14   agency priorities" given the issues identified. *Id.* The letter did not mention any Executive Orders. *See id.*

15   In a second letter dated August 1, 2025, NSF "supplement[ed its] previous communication."
16   Supplemental Letter at 1. There, NSF explained that the suspension previously communicated: "is to
17   address concerns reported and observed in UCLA programs and ensure compliance with applicable
18   Federal statutes and regulations, and the terms and conditions of these Federal awards." *Id.* NSF identified
19   several "specific examples of noncompliance": (1) "illegal race-based preferences in admissions
20   practices;" (2) "fail[ure] to promote a research environment free of antisemitism and bias;" and (3)
21   "discriminat[ion] against and endanger[ing] women by allowing men in women's sports and private
22   women-only spaces." *Id.* NSF subsequently dedicated a paragraph to each identified example of
23   noncompliance with cited sources. *Id.* at 1-2. For example, NSF cited "UCLA's own Task Force to Combat
24   Antisemitism and Anti-Israeli Bias" which, NSF explained, "revealed that Jewish students, faculty, and
25   staff were subjected to threats, assaults, swastika graffiti, and hostile slogans during the 2024 pro-
26   Palestinian encampment." *Id.* at 2. As to reliance interests, NSF reiterated that "NSF has considered
27   UCLA's reliance interests in continued availability of funding under the attached list of grants, and they

28   DEFENDANT NSF'S SUBMISSION REGARDING SUSPENSION OF NSF GRANTS TO UCLA
     CASE NO. 25-CV-4737

1 are outweighed by the concerns identified." *Id.*

2 NSF also stated its "willing[ness] to work with UCLA to identify corrective actions to bring UCLA into compliance." *Id.* To that end, it requested a "written corrective action plan." *Id.* NSF also set a deadline, stating "UCLA must acknowledge in writing its willingness to discuss these corrective actions by August 15." *Id.* NSF closed by explaining "that under 2 CFR § 200.340, NSF may move to terminate an award for reasons including if the recipient has failed to comply with the terms and conditions of an award." *Id.* at 3. The letter did not cite any Executive Order.

NSF has not suspended any grants reinstated pursuant to the non-prospective portion of the Court's preliminary injunction. That is, the grants within the scope of the preliminary injunction that have previously been reinstated, which NSF has identified for Plaintiffs on a spreadsheet, have not been affected. NSF, through counsel, has also been working with Plaintiffs to investigate additional prior grant terminations that NSF was unable to identify using its search system and may be covered by the Court's injunction—and NSF will continue to work with Plaintiffs on that ongoing compliance effort.

*Procedural Background*

On August 1, 2025, Plaintiffs' counsel in this matter emailed undersigned counsel seeking letters sent by NSF to UCLA, in order to determine Plaintiffs' position on whether the prospective portion of the Court's injunction applies to NSF's suspension. NSF, through undersigned counsel, provided the Suspension Letter and Supplemental Letter to Plaintiffs' counsel that same day. Undersigned counsel also informed Plaintiffs' counsel of NSF's position that the action is not covered by the Court's injunction because it is a suspension, not a termination, and does not meet the criteria set out in the Preliminary Injunction for the Equity Termination Class and Form Termination Class.

NSF's counsel subsequently proposed that the parties file a joint notice outlining the parties' positions if there was disagreement over the applicability of the injunction. Plaintiffs' counsel later advised that Plaintiffs viewed the injunction as applying to the suspension and proposed the parties file separate notices of their positions on Monday, August 4.

//

//

DEFENDANT NSF'S SUBMISSION REGARDING SUSPENSION OF NSF GRANTS TO UCLA
CASE NO. 25-CV-4737

# DISCUSSION

NSF respectfully submits that this suspension is not covered by the prospective portion of the Court's preliminary injunction. First, it is a suspension, not a termination, so the injunction by its terms does not apply to this action. Only a future termination, if one were to occur, could potentially fall under the injunction's umbrella. Nor does this action fall within either class identified in the Court's order. The Equity Termination Class criteria do not apply because the Suspension Letter and Supplemental Letter are based on actions taken by the grantee, rather than Executive Orders 14151 or 14173. The Form Termination Class criteria do not apply either—the letters explain, in detail, and with findings specific to UCLA, the reason for the change following the agency's original decision to fund the grants and that NSF explicitly considered reliance interests.

## I. A Grant Suspension is Not Covered by the Injunction

A suspension does not fall within the scope of the injunction because the injunction only applies to terminated grants. Here, NSF suspended—and has not terminated—certain awards to UCLA. Terminations and suspensions are materially different. A suspension is a temporary stop to grant activities or funding, not a permanent end to the grant. *See* NSF Proposal & Award Policies & Procedures Guide 24-1 ("PAPPG") XII(A)(1) ("SUSPENSION means an action by NSF that temporarily withholds Federal support of a project pending corrective action by the recipient or a decision by NSF to terminate the award.").[2] It is meaningfully different from a termination because it can be lifted once the grantee takes certain corrective actions. Thus, the suspension action falls outside the scope of the injunction. In fact, the Court did not adopt Plaintiffs' broader proposed class definition which included the word "suspended" in its scope. Mem. Op. at 52 n.28. And the injunction in this case, by its term, applies solely to "terminated" grants. Preliminary Injunction ¶¶ 1, 3; *see also id.* at 5 ("future grant terminations").

Indeed, NSF has expressed willingness "to work with UCLA to identify corrective actions to bring UCLA into compliance." Supplemental Letter at 2. The letter requested that the grantee "acknowledge in writing its willingness to discuss [certain] corrective actions by August 15." *Id.* The Supplemental Letter

---

[2] https://nsf-gov-resources.nsf.gov/files/nsf24_1.pdf (last visited Aug. 4, 2025).

DEFENDANT NSF'S SUBMISSION REGARDING SUSPENSION OF NSF GRANTS TO UCLA
CASE NO. 25-CV-4737

1  also outlined a detailed procedure for the grantee to submit a corrective action plan to NSF, and a process
2  for NSF to evaluate and provide feedback on the grantee's corrective action plan. *Id.* And NSF explained
3  that "NSF may move to terminate an award [in the future] for reasons including if the recipient has failed
4  to comply with the terms and conditions of an award." *Id.* at 3. Accordingly, instead of terminating the
5  grants at issue in the suspension action, NSF has reserved its rights pending future communications with
6  the grantee.
7        In sum, this suspension action is not a "termination" within the scope of the Court's injunction.
8  The Court did not include suspensions in the terms of its injunction; NSF differentiates between
9  suspensions and terminations in its policies and terms; and the grantee may successfully be able to avoid
10  a termination through corrective action.

11  **II.     The Suspension Falls Outside the Equity Termination Class Criteria**

12        Even if the injunction does cover a suspension, the NSF suspension action does not meet the
13  criteria for the Equity Termination Class aspect of the injunction. This provision applies to "[a]ll grants
14  terminated by Agency Defendants pursuant to Executive Orders 14151 or 14173." Preliminary Injunction
15  ¶ 4a. As the Court explained in its opinion, Executive Order 14151 directs "to the maximum extent allowed
16  by law" termination of "*all* . . . equity-related grants or contracts." Mem. Op. at 18 (quoting 90 Fed. Reg.
17  8339, 8339 (Jan. 20, 2025)) (internal quotation marks omitted). And Executive Order 14173, as relevant,
18  directs the termination of "all diversity, equity, . . . and like . . . programs[] or activities." *Id.* (quoting 90
19  Fed. Reg. 8633, 1634 (Jan. 21, 2025) (internal quotation marks omitted).
20        The Court concluded that terminations of grants pursuant to those Executive Orders were likely
21  unlawful under the First Amendment because, the Court held, the terminations were "for touching on
22  prohibited topics" identified in the Executive Orders. *Id.* at 19. That is, the Court held that NSF likely
23  "penalize[d] existing grants across the board for promoting forbidden views" in a manner forbidden by
24  the First Amendment. *Id.* at 20; *see also id.* at 21 ("Plaintiffs have shown a substantial likelihood that their
25  funding was terminated based on the viewpoint expressed in their grant proposals."); *accord id.* at 22-24
26  (looking to the content of grants to determine whether "NSF likely acted contrary to [its] enabling statute[]
27  when terminating Plaintiffs' funding pursuant to the Equity Termination Orders" (footnote omitted)).
28  DEFENDANT NSF'S SUBMISSION REGARDING SUSPENSION OF NSF GRANTS TO UCLA
CASE NO. 25-CV-4737

1    But the Suspension Letter and Supplemental Letter cited "concerns reported and observed in
2    UCLA programs" as the basis for suspending grants. Supplemental Letter at 1; *accord* Suspension Letter
3    at 1 (citing race discrimination in student life and admissions and antisemitism in the grantee's research
4    environment). There is no suggestion that NSF acted pursuant to Executive Orders 14151 or 14173. Thus,
5    the Equity Termination Class criteria does not apply.

6    **III.    The Suspension Falls Outside the Form Termination Class Criteria**

7    The suspension does not implicate the Form Termination Class either. The Court's injunction
8    covers terminations "communicated by means of a form termination notice that does not provide a grant-
9    specific explanation for the termination that states the reason for the change to the original award decision
10   and considers the reliance interests at stake." Preliminary Injunction ¶ 2b. NSF's suspension letters do not
11   fall within these criteria because the letters explain both the reason for the change based on particularized
12   assessments specific to the grantee and consider the reliance interests involved.

13   In in its preliminary injunction order, the Court found that NSF invoked a "list of priorities and
14   reasonable causes" from which "it is impossible to determine . . . why the specific project was found to
15   be incompatible with the Agency's priorities." *See* Mem. Op. at 27. Here, by contrast, NSF identified
16   specific issues with *the grantee* that, in NSF's view, counseled in favor of suspending certain federal grant
17   spending. Suspension Letter at 1; Supplemental Letter at 1-3. NSF's suspension, by its terms, is based on
18   specific behavior for which the grantee could take corrective action. Supplemental Letter at 2-3. NSF's
19   communication includes a paragraph for each example of noncompliance and citations to sources—mostly
20   the grantee's own—supporting NSF's assertions. *Id.* at 1-2. As a result of these findings, NSF concluded
21   that the grantee "fail[ed] to comply with federal requirements, policies, and procedures." *Id.* at 2; *see also*
22   *id.* (seeking "reasonable assurance that the organization will be managing its Federal awards in compliance
23   with Federal statutes, regulations, and award terms and conditions"). The suspension thus "states the
24   reason for the change to the original award decision" and does not fall within that portion of the Form
25   Termination Class criteria.

26   As to reliance interests, NSF explicitly and clearly considered the reliance interests involved. In
27   the Suspension Letter, NSF explained that it had "considered reliance interests and they are outweighed

DEFENDANT NSF'S SUBMISSION REGARDING SUSPENSION OF NSF GRANTS TO UCLA
28   CASE NO. 25-CV-4737

by the NSF's policy concerns." Suspension Letter at 1. And in its supplement, the agency further noted "NSF has considered UCLA's reliance interests in continued availability of funding under the attached list of grants, and they are outweighed by the concerns identified." Supplemental Letter at 2.

It is true that the suspension here applies to multiple grants. Nonetheless, NSF understands its letters to be "grant-specific" because their reasoning applies across the grantee's grant portfolio, and the analysis is specific and detailed as to UCLA itself. As explained in the letters, NSF's concern is based on findings as to the grantee itself and the grantee's "failure to comply with federal requirements, policies, and procedures." *Id.* The letters thus include a detailed explanation for the change in decision as to all the suspended grants, and a consideration of reliance interests as to those grants. That is a "grant-specific explanation" because it properly "states the reason for the change to the original award decision and considers the reliance interests at stake."

In sum, the detailed letters here explain why NSF has undertaken this suspension action and NSF explicitly considered the reliance interests involved in such a suspension. The Form Termination Class criteria therefore do not apply to this suspension.

## CONCLUSION

For the foregoing reasons, NSF respectfully requests that the Court advise the parties that the preliminary injunction does not apply to the suspension action encompassed in the Suspension Letter and Supplemental Letter.

DATED: August 4, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

DEFENDANT NSF'S SUBMISSION REGARDING SUSPENSION OF NSF GRANTS TO UCLA
CASE NO. 25-CV-4737

|   |   |
|---|---|
| 1 | /s/ Jason Altabet |
| 2 | JASON ALTABET (Md. Bar No. 2211280012) |
|   | Trial Attorney, U.S. Department of Justice |
| 3 | Tel.: (202) 305-0727 |
|   | Email: jason.k.altabet2@usdoj.gov |
| 4 |   |
|   | KATHRYN BARRAGAN (D.C. Bar No. 90026294) |
| 5 | Trial Attorney, U.S. Department of Justice |
|   | Civil Division, Federal Programs Branch |
| 6 | 1100 L Street, N.W. |
| 7 | Washington, D.C. 20005 |
|   | Tel.: (202) 598-7696 |
| 8 | Email: kathryn.e.barragan@usdoj.gov |

*Attorneys for the United States*

DEFENDANT NSF'S SUBMISSION REGARDING SUSPENSION OF NSF GRANTS TO UCLA
CASE NO. 25-CV-4737