No. 25-4249

# United States Court Of Appeals
# For the Ninth Circuit

---

NEETA THAKUR, et al.,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, et al.,

*Defendants-Appellants.*

*Appeal from a Decision of the United States District Court for the Northern District of California, No. 3:25-cv-04737-RFL   Honorable Rita F. Lin*

---

## PLAINTIFF-APPELLEES' RESPONSE TO DEFENDANT-APPELLANTS' MOTION FOR PANEL RECONSIDERATION OR RECONSIDERATION EN BANC

ANTHONY P. SCHOENBERG
LINDA S. GILLERAN
DONALD E. SOBELMAN
KYLE A. MCLORG
DYLAN M. SILVA
KATHERINE T. BALKOSKI
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400 Telephone
tschoenberg@fbm.com
lgilleran@fbm.com
dsobelman@fbm.com
kmclorg@fbm.com
dmsilva@fbm.com
kbalkoski@fbm.com

ELIZABETH J. CABRASER
RICHARD M. HEIMANN
KEVIN R. BUDNER
ANNIE M. WANLESS
NABILA M. ABDALLAH
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
(415) 956-1000 Telephone
ecabraser@lchb.com
rheimann@lchb.com
kbudner@lchb.com
awanless@lchb.com
nabdallah@lchb.com

ERWIN CHEMERINSKY
CLAUDIA POLSKY
U.C. BERKELEY SCHOOL OF LAW
215 Boalt Hall
Berkeley, California 94720-7200
(510) 642-6483 Telephone
echemerinsky@law.berkeley.edu
cpolsky@law.berkeley.edu

*Attorneys for Plaintiffs-Appellees*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY ............................................4

III.    ARGUMENT........................................................................................8

A.      The District Court Had Jurisdiction to Enjoin the Government's
        Termination of Grants as Violating the First Amendment............................8

B.      The District Court Had Jurisdiction Over Plaintiffs' APA Claims,
        Because the Court of Federal Claims Does Not Have Jurisdiction, and
        the Tucker Act Does Not Apply to Those Claims........................................9

C.      The District Court Correctly Balanced the Equities in Issuing the
        Preliminary Injunction. ...............................................................13

IV.     CONCLUSION.......................................................................................16

46686\20645521.1

RESPONSE TO MOTION FOR PANEL
RECONSIDERATION OR RECONSIDERATION
EN BANC – No. 25-4249

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## FEDERAL CASES

*Cienega Gardens v. United States*,
    194 F.3d 1231 (Fed. Cir. 1998)............................................................................10

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health and Human Servs.*,
    137 F.4th 932 (9th Cir. 2025) ........................................................................3,9,10

*Dep't of Educ. v. California*,
    604 U.S. 650 (2025)................................................................................... *passim*

*Elrod v. Burns*,
    427 U.S. 347 (1976)...........................................................................................14

*McNary v. Haitian Refugee Ctr., Inc.*,
    498 U.S. 479 (1991)...........................................................................................11

*National Institutes of Health v. American Public Health Ass'n*,
    145 S.Ct. 2658 (2025)................................................................................ *passim*

*President and Fellows of Harvard Coll. v. U.S. Dep't of Health and Human
    Servs.*,
    Case 1:25-cv-11048-ADB, 2025 WL 2528380 (D. Mass. Sept. 3, 2025) ................................8

*Thakur v. Trump*,
    148 F.4th 1096 (9th Cir. 2025) ................................................................. *passim*

*Thakur v, Trump*,
    No. 25-cv-04737-RFL, 2025 WL 1734471 (N.D. Cal. Jun. 23, 2025)........................... *passim*

*Thakur v. Trump*,
    No. 25-CV-04737-RFL, 2025 WL 2325390 (N.D. Cal. Aug. 12, 2025).................................7

*Thakur v. Trump*,
    No. 25-cv-04737-RFL, 2025 WL 2696424 (N.D. Cal. Sept. 22, 2025) ................................2,3

*United Aeronautical Corp. v. U.S. Air Force*,
    80 F.4th 1017 (9th Cir. 2023) ...........................................................................3,8

## FEDERAL STATUTES

20 U.S.C.
    §§ 1234a, 1234b.................................................................................................15

Administrative Procedure Act................................................................... *passim*

RESPONSE TO MOTION FOR PANEL
RECONSIDERATION OR RECONSIDERATION
EN BANC – No. 25-4249

## TABLE OF AUTHORITIES
### (continued)

**Page**

Impoundment Control Act ..................................................................................................6

### FEDERAL RULES AND REGULATIONS

2 C.F.R. § 200.346 (2024) ...........................................................................................15

### OTHER AUTHORITIES

U.S. Const. ..................................................................................................... *passim*

J. Shaffer & D. Ramish, *Federal Grant Practice* § 36:29 (2024 ed.)...........................................15

*Trump Wants U.C.L.A. to Pay $1 Billion to Restore Its Research Funding*, New
    York Times, August 9, 2025.........................................................................................7

## I.   <u>INTRODUCTION</u>

This case poses a question of profound importance: may the President, and

agencies under his direction, cut off hundreds of millions of dollars of grants to

researchers arbitrarily, without due process, without following the procedures

required by law, and often on the basis of the perceived viewpoint of the research?

As this Court recognized in denying Defendants' motion for a stay, the

stakes for the researchers, for society, and for the world could not be higher. Once

funds are cut off, research must stop. Laboratories must close. Staff is laid off;

post-doctorate researchers and graduate students must leave. Papers are not

published. Research, including for scientific and medical advances, ceases. Even if

later somehow the research resumes, it is permanently and irreparably set back.

On June 23, 2025, the District Court issued a thorough and well-reasoned

order granting Plaintiffs' motions for preliminary injunction and class certification.

That order certified two classes of plaintiffs: (1) those whose grants were

terminated by form letters in violation of the Administrative Procedure Act

("APA"), and (2) those whose grants were terminated based on their viewpoint in

violation of the First Amendment. It also imposed a preliminary injunction against

three federal agencies: the Environmental Protection Agency ("EPA"), the

National Endowment of the Humanities ("NEH"), and the National Science

RESPONSE TO MOTION FOR PANEL
RECONSIDERATION OR RECONSIDERATION
EN BANC – No. 25-4249

Foundation ("NSF").[1]

The government then moved to stay the preliminary injunction as to EPA and NEH only. This Court denied the motion to stay, finding Plaintiffs likely to succeed on the merits of their claims. *Thakur v. Trump*, 148 F.4th 1096 (9th Cir. 2025) ("*Thakur*"). Now, the government moves for panel reconsideration or reconsideration en banc (the "Motion") on a single basis: the Supreme Court's emergency docket decision in *National Institutes of Health v. American Public Health Ass'n*, 145 S.Ct. 2658 (2025) ("*NIH*"). *See* Motion at 2.[2]

But for reasons explained in this Court's stay denial, as supported by other Ninth Circuit decisions undisturbed by the *NIH* opinion, this case is distinguishable. First, the District Court found (and this Court confirmed) that the terminations likely violated the First Amendment. *NIH* does not change that conclusion because no constitutional claims were considered there. The

---

[1] The District Court limited relief to those agencies from which the named Plaintiffs received grants. Plaintiffs subsequently amended their Complaint and moved for a preliminary injunction on behalf of additional named Plaintiffs from the Department of Defense, the Department of Transportation, and the National Institutes of Health. On September 22, 2025, the District Court extended the preliminary injunction and granted class certification as to those agencies. *See* Order Granting Mot. for Prelim. Inj. And Provision Class Certification as to Additional Agency Defendants, As Modified, Dkt. 133 (*Thakur v. Trump*, No. 3:25-cv-04737-RFL, 2025 WL 2696424 (N.D. Cal. Sept. 22, 2025)).

[2] Because the Motion raises only one argument, this brief responds just to that argument. Other issues concerning the preliminary injunction are fully briefed in Plaintiffs' August 26, 2025 Answering Brief.

RESPONSE TO MOTION FOR PANEL
RECONSIDERATION OR RECONSIDERATION
EN BANC – No. 25-4249

government recognizes this, and does not seek reconsideration of this Court's ruling on the First Amendment issue. Motion at 8 (seeking review only "on APA grounds"). This Court has long concluded that the Tucker Act does not divest district courts of jurisdiction over constitutional claims. *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023).

Second, Plaintiffs are not parties to the grant contracts. Accordingly, as the District Court and this Court found, they cannot sue in the Court of Federal Claims ("CFC"). *See* Order Granting Mot. for Prelim. Inj. and Provisional Class Certification (June 23, 2025), at ER-41-42 ("PI Order") (*Thakur v. Trump*, No. 3:25-cv-04737-RFL, 2025 WL 1734471 (N.D. Cal. Jun. 23, 2025)); *Thakur*, 148 F.4th at 1104; *see also* Order Granting PI and Provisional Class Cert. as to Additional Agencies (Dkt. 133) (*Thakur*, 2025 WL 2696424, at *8-11). Thus, barring Plaintiffs from suing in district court would leave them with no forum whatsoever. This result is inconsistent with the APA, due process of law, and Ninth Circuit precedent holding that the Tucker Act applies only where the CFC has jurisdiction. *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health and Human Servs.*, 137 F.4th 932, 939 (9th Cir. 2025). Nothing in *NIH* addresses, explicitly or implicitly, the ability of individual faculty and researchers to sue in district court. Nor does it suggest the Tucker Act applies where the CFC lacks jurisdiction.

Third, as to the balance of equities, the Supreme Court in *NIH* expressed concern that the government could not recoup funds later deemed to have been wrongly disbursed. But it did so after finding the government likely to succeed on the jurisdictional argument that fails here. Thus, the likelihood of any recoupment scenario arising here is dramatically reduced.

Further, as this Court noted in its stay denial, "unlike in *Department of Education*, Plaintiffs here contend—and the Government does not meaningfully contest—that there are 'existing mechanisms to recoup funds.'" *Thakur*, 148 F.4th at 1110, n. 8 (citing *Dep't of Educ. v. California*, 604 U.S. 650 (2025) ("*Department of Education*")). The state of California and the University of California certainly have the resources necessary to satisfy a judgment in the unlikely event that the government prevails.

Thus, while this case involves many of the same issues as those in *NIH*—notably, the same government misconduct and the same irreparable harms to grantees—it is distinct in crucial respects, including the absence of the CFC as a judicial forum for Plaintiffs, and the absence of irreparable harm to the government. Rehearing is not necessary to reach this conclusion. The Motion should be denied.

## II.     FACTUAL AND PROCEDURAL HISTORY

Plaintiffs are researchers at the University of California ("UC"), the world's

leading public research institution. The research conducted by Plaintiffs and their peers has changed the world, increased human knowledge, and contributed to the prominence and security of the United States and the health and welfare of all Americans.

Beginning on January 20, 2025, President Trump issued Executive Orders directing agencies to terminate grants, including those related to disfavored topics, such as diversity, equity, and inclusion ("DEI"). EPA, NEH, and NSF (collectively, "Agency Defendants") implemented the President's orders by abruptly and unlawfully terminating grants *en masse*. They selected grants for termination using keyword searches for what they deemed forbidden topics, and terminated those grants via form letters without reasoned explanation or consideration of reliance interests.

These terminations dealt a devastating blow to UC researchers, who relied on such federal grants. PI Order, ER-6-67. Between January 20 and June 2025, the government terminated over $324 million in UC grants. Compl. ¶ 112 (June 4, 2025), ER-166-272; *see also* PI Order at ER-20. This is a significant underestimate, as it is based on what was listed on the Department of Government Efficiency (DOGE) website, which was incomplete and omitted terminated UC sub-grants.

Plaintiffs filed their class action complaint seeking declaratory and

5

RESPONSE TO MOTION FOR PANEL
RECONSIDERATION OR RECONSIDERATION
EN BANC – No. 25-4249

injunctive relief on June 4, 2025. ER-166-272. They filed motions for preliminary injunction (ER-286) and class certification (ER-288) a day later. The District Court granted both motions, finding Plaintiffs likely to succeed on their APA and First Amendment claims, and that "the balance of equities and the public interest strongly favor the entry of a preliminary injunction."[3] PI Order at ER-7-8; ER-52-53; *see also* ER-3-5. The District Court certified two classes—a form termination class, for plaintiffs whose grants were terminated via form letter, and an equity termination class, for plaintiffs whose grants were terminated based on forbidden viewpoint—and ordered injunctive relief.

Agency Defendants began reinstating grants pursuant to the PI Order, allowing Plaintiffs to access funds and resume research. Defs.' July 10 and July 18, 2025 Status Reports, *Thakur v. Trump*, No. 3:25-cv-04737-RFL, Dkt. Nos. 66, 72. Then, after waiting weeks, NEH and EPA filed a motion to partially stay the preliminary injunction.

NSF did not join NEH and EPA's motion. When this Court asked "Why?" during the July 31, 2025 hearing, the government's counsel said NSF wanted to avoid turning the grants on, off, and back on again. The government failed to

---

[3] The District Court did not reach the other claims in Plaintiffs' Complaint, including that the termination of grants violated separation of powers, the Impoundment Control Act, and due process of law. PI Order at ER-40. They remain a basis for injunctive relief.

disclose that in form letters dated July 30 and August 1 and sent on August 1, Defendant Agencies, including NSF, indefinitely suspended $584 million in funding to UCLA researchers.[4] *See Thakur v. Trump*, No. 25-CV-04737-RFL, 2025 WL 2325390, at *1 (N.D. Cal. Aug. 12, 2025). On August 12, 2025, the District Court found that NSF's indefinite suspensions of grants to UCLA faculty and researchers violated its Order and ordered the grants restored. *Id.*[5]

On August 21, 2025, this Court denied Defendants' stay motion. It held that Plaintiffs have standing because of the great harms that they suffer from the termination of grants. *Thakur*, 148 F.4th at 1105. And it explained that the Tucker Act does not apply because, among other reasons, Plaintiffs' non-party status means the CFC would not have jurisdiction over their claims. *Id.* at 1103-04.

On the merits, this Court found that the *en masse* terminations, without individualized consideration or evaluation of reliance interests, likely violated the APA. *Id.* at 1105-07. It also held that the government likely violated the First Amendment by terminating grants based on the perceived viewpoint of the research. *Id.* at 1107-09. And it found the balance of equities favored issuance of

---

[4] *See Trump Wants U.C.L.A. to Pay $1 Billion to Restore Its Research Funding*, New York Times, August 9, 2025, https://www.nytimes.com/2025/08/08/us/trump-ucla-research-funding-deal.html.

[5] The government's subsequent request that NSF be added to the stay motion is pending with this Court. Dkt. 34.1.

the preliminary injunction. *Id*. at 1109-10.

## III.  ARGUMENT

### A.  The District Court Had Jurisdiction to Enjoin the Government's Termination of Grants as Violating the First Amendment.

The District Court acted within its authority in enjoining the Government's grant terminations on First Amendment grounds. In *NIH* and *Department of Education*, the Supreme Court focused only on whether federal district courts had jurisdiction to hear APA claims challenging grant terminations. Nothing in those rulings implies that district courts lack jurisdiction over constitutional or other statutory claims.

This Court has made clear that the Tucker Act does not bar jurisdiction over such claims: "[I]f rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction[.]" *United Aeronautical Corp.,* 80 F.4th at 1026.[6]

At oral argument on July 31, 2025, the government's counsel conceded that its Tucker Act argument applied only to Plaintiffs' APA claims. And the Motion argues only that *NIH* requires reconsideration of the APA claims, not the First

---

[6] On September 3, 2025, the District of Massachusetts came to the same conclusion as this Court, holding the Tucker Act does not bar a federal district court from hearing a First Amendment challenge to grant terminations. *President and Fellows of Harvard Coll. v. U.S. Dep't of Health and Human Servs.*, Case 1:25-cv-11048-ADB, 2025 WL 2528380, at *10-15 (D. Mass. Sept. 3, 2025). The court issued a permanent injunction against the termination of funds to Harvard University. *Id*. at *37; *see also* Dkt. 50.1 (Rule 28(j) Letter).

Amendment claims. *See* Motion at 8. Thus, the Motion does not implicate the

Court's findings as to Plaintiffs' First Amendment claims.

### B. The District Court Had Jurisdiction Over Plaintiffs' APA Claims, Because the Court of Federal Claims Does Not Have Jurisdiction, and the Tucker Act Does Not Apply to Those Claims.

The premise of the government's argument—and the Supreme Court's

rulings in *NIH* and *Department of Education*—is that Article III courts lack

jurisdiction to hear APA grant termination challenges because the Tucker Act

vested the CFC with exclusive jurisdiction over those plaintiffs' claims. But unlike

in *NIH* and *Department of Education*, the CFC has no jurisdiction to hear

Plaintiffs' claims in this case, and thus the Tucker Act does not divest the district

court of jurisdiction.

As the government stressed repeatedly to both this and the District Court,

Plaintiffs are not parties to the grant agreements. Dkt. No. 26.1 at 38 (Appellants'

Br.); *see also* Dkt. 35 at 17, *Thakur*, No. 3:25-cv-04737-RFL (June 12, 2025)

(arguing Plaintiffs are "**Not Parties to Any Terminated Contract**"). This

concession is fatal to the government's invocation of the Tucker Act: the law is

clear that only parties to contracts with the United States may sue for breach of

contract in the CFC.

This Circuit's recent decision in *Community Legal Services*, 137 F.4th at

939, made explicit that the Tucker Act does not apply where the CFC lacks

9

jurisdiction. There, this Court declared: "But there cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act. For this reason, the D.C. Circuit has categorically rejected the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Id.* And as explained by the Federal Circuit Court of Appeal, "to maintain a cause of action pursuant to the Tucker Act that is based on a contract, *the contract must be between the **plaintiff** and the **government**.*" *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (quotation omitted) (emphasis added).

The District Court here reached the same conclusion, noting that "[i]f Plaintiffs' claims were sent to the Court of Federal Claims, binding precedent in that jurisdiction would require the suit to be dismissed for lack of jurisdiction and sent back to the district court." PI Order at ER-41-42. This Court also observed in its stay denial that "[i]ndeed, the record does not reflect that Plaintiffs are even parties to the grant agreements." *Thakur*, 148 F.4th at 1104.

Thus, the government is wrong to argue that Plaintiffs' non-party status "makes no difference." Motion at 12. It makes all the difference. Just as in *Community Legal Services*, "[t]he result requested by the Government would mean that no court has jurisdiction to hear plaintiffs' claims. Not only is this result contrary to common sense, but it also conflicts with the 'strong presumption

10

favoring judicial review of administrative action' that is embodied in the APA."
137 F.4th at 939 (citation omitted). Leaving plaintiffs without recourse when they
are personally injured and have standing implicates serious due process concerns,
and is inconsistent with the strong presumption favoring judicial review of
administrative action. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496
(1991) ("given [the] well-settled presumption favoring interpretations of statutes
that allow judicial review of administrative action . . . it is most unlikely that
Congress intended to foreclose all forms of meaningful judicial review.") (citation
omitted).[7]

The government reads *NIH* as precluding district court jurisdiction over all
APA grant termination claims. That is not what the Supreme Court held. In fact,
five justices in *NIH* agreed that district courts may hear APA challenges to policy
directives causing grant terminations. *See NIH*, 145 S.Ct. at 2660-2663 (Barrett, J.,
concurring).

Most importantly, nothing in *NIH* explicitly or implicitly addresses whether
the Tucker Act applies when plaintiffs cannot sue in the CFC. The government

---

[7] Nor can the government now argue that Plaintiffs have third party beneficiary
standing in the CFC. Defendants argued the opposite in an effort to rebut
Plaintiffs' standing. *See* Dkt. 35 at 19-20, *Thakur*, No. 3:25-cv-04737-RFL (June
12, 2025) ("Plaintiffs are not in privity with the government and lack rights under
these contracts—*they are neither parties nor intended third-party beneficiaries*.")
(emphasis added).

RESPONSE TO MOTION FOR PANEL
RECONSIDERATION OR RECONSIDERATION
EN BANC – No. 25-4249

says some *NIH* plaintiffs were not parties to the grants, and that this was mentioned in one of the stay opposition briefs. Motion at 15. Not true: APHA instead argued that the CFC lacked jurisdiction because grants are not contracts. *See* APHA Resp't Pls.' Stay Opp'n, *NIH*, No. 25A103, 2025 WL 2244206, at *28-29 (U.S. Aug. 1, 2025). The Supreme Court rejected this argument because it appears to have concluded (albeit without analysis) that grants are contracts. *See NIH*, 145 S.Ct. at 2659.

Nowhere in the fractured *NIH* decision does the Court indicate that it actually considered, let alone decided, whether the Tucker Act applies to a plaintiff that lacks standing as a non-party to a contract. Nor does the decision suggest that the Court interpreted the Tucker Act to deprive an injured plaintiff of *any forum* in which to be heard. A brief, unrelated argument in one appellate brief, entirely ignored in the resultant *per curiam* decision, does not demonstrate that the Supreme Court even considered this important question, let alone ruled on it. Certainly, it cannot support the extreme outcome urged by the government: a complete preclusion of jurisdiction in any federal court to hear the claims of seriously injured Plaintiffs.

The Motion argues that "it would not be logical to allow indirect recipients of grant funding to bring APA claims challenging the government's grant terminations while barring direct recipients of the grants from bringing those same

claims." Motion at 14. But as the government makes clear, direct grant recipients *do* have a forum where they can sue: the CFC. That those direct recipients must go to a different court does not mean that Plaintiffs should have no forum at all. There is no basis for believing that the Supreme Court directed that result, which would conflict with countless of its precedents, as well as this Court's decisions, that emphasize the strong presumption against complete jurisdictional preclusion.

### C.     The District Court Correctly Balanced the Equities in Issuing the Preliminary Injunction.

The District Court concluded that "both the balance of equities and the public interest strongly favor the entry of a preliminary injunction." PI Order, ER-52. This Court reached the same conclusion in its stay denial. *Thakur*, 148 F.4th at 1109-10.

Here, the government is not likely to succeed on the merits of its Tucker Act challenge for the reasons explained above, nor on its other already rejected arguments attempting to justify the terminations. As this Court already held, the government's irreparable harm position "rests on the assumption that the government's conduct is lawful[,] [b]ut the government has not made a strong showing of a likelihood of success on the merits, and the government cannot suffer harm from an injunction that merely ends an unlawful practice." *Thakur*, 148 F.4th at 1109 (quotation omitted). Thus, *NIH* gives this Court no reason to reconsider its finding that the balance of the equities tips in Plaintiffs' favor here.

In both *Department of Education* and *NIH*, the Court looked at only one side of the balance—the government's, after concluding it was likely to succeed on the merits of its Tucker Act challenge—and expressed concern about the government's ability to recoup erroneously disbursed funds. *Dep't of Educ.*, 604 U.S. at 651–52; *NIH*, 145 S. Ct. at 2659.

But of course, balancing the equities requires looking at the interests of both sides, and here, the harms to Plaintiffs are enormous and irreparable. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). And both this Court and the District Court concluded that "entry of a stay will result in considerable harm to Plaintiffs and the public." *Thakur*, 148 F.4th at 1110. As the District Court explained:

> [T]he record contains detailed and unrebutted evidence of the irreparable harm that Plaintiffs are already experiencing, including layoffs of team members, interruption of graduate programs, and the potential complete loss of projects, all of which will harm Plaintiffs' professional reputations. . . . Furthermore, when Plaintiffs' multi-year projects rely heavily on federal funding, '[a] total loss of federal funding would be catastrophic, and the [Plaintiffs'] need for certainty renders damages inadequate.'

PI Order at ER-52-53; *see also Thakur*, 148 F.4th at 1110 (detailing same harms).

None of this can be remedied by awarding damages or restoring grants at the end of the litigation. The labs will have closed; the studies will have been halted;

14

the staff will be gone. The research that would have occurred in that time will not have happened. There will be no way to know what might have been discovered if only the research had gone forward, or to provide compensation for what was lost.

On the other side of the balance, the government claims that if it is ordered to restore grants, it cannot recoup the money if ultimately it prevails in the litigation. The Supreme Court pointed to this in its rulings in *Department of Education*, 604 U.S. at 651–52, and *NIH*, 145 S.Ct. at 2659.

But there are legal mechanisms for the government to recoup funds. As Justice Jackson noted, "the Government has various legal mechanisms to recoup these kinds of funds. *See, e.g.*, 20 U.S.C. §§ 1234a, 1234b; 2 C.F.R. § 200.346 (2024); *see also* J. Shaffer & D. Ramish, *Federal Grant Practice* § 36:29 (2024 ed.) ('In the end, the Government usually gets its money')." *Department of Education*, 604 U.S. at 661 (Jackson, J., dissenting).[8]

In *NIH,* the Court discounted "plaintiffs' contention that they lack the resources to continue their research projects without federal funding" because it found the contention "inconsistent with the proposition that they have the resources to make the Government whole for money already spent." 145 S.Ct. at 2659. That is not so here. Plaintiffs are researchers whose work is dependent on this grant

---

[8] Whether the government would be entitled to recoupment using these mechanisms on the basis of a complete record, and subject to Plaintiffs' defenses, need not be decided at this juncture, and Plaintiffs do not concede that it would be.

RESPONSE TO MOTION FOR PANEL
RECONSIDERATION OR RECONSIDERATION
EN BANC – No. 25-4249

funding; they do not have the resources to continue that work if the grants are terminated, and there is no indication that there is any source of replacement funds. If, however, the government ultimately prevails and seeks to recoup the money, it could bring an action, using the above-described mechanisms, to collect from the state of California and the UC. The fact that there is no realistic chance that the state of California and the UC will provide funds for Plaintiffs in the near term does not mean that Defendants could not bring a collection action against them should Defendants prevail. Accordingly, this Court was correct to note that "unlike in *Department of Education*, Plaintiffs here contend—and the Government does not meaningfully contest—that there are 'existing mechanisms to recoup funds.'" *Thakur*, 148 F.4th at 1110 n.8. And regardless, as this Court also observed: "Even if the government may be unable to recover at least some of the funds it disburses pursuant to the grants and may therefore suffer some degree of irreparable harm, the remaining equitable factors do not favor the government." *Id.* at 1110.

## IV.    **CONCLUSION**

For these reasons, the government's request for rehearing or rehearing en banc should be denied.

September 26, 2025                    By: */s/ Donald E. Sobelman*
                                      Donald E. Sobelman

                                      DONALD E. SOBELMAN
                                      ANTHONY P. SCHOENBERG
                                      LINDA S. GILLERAN
                                      KYLE A. MCLORG
                                      DYLAN M. SILVA
                                      KATHERINE T. BALKOSKI
                                      FARELLA BRAUN + MARTEL LLP
                                      One Bush Street, Suite 900
                                      San Francisco, California 94104
                                      (415) 954-4400 Telephone
                                      dsobelman@fbm.com
                                      tschoenberg@fbm.com
                                      lgilleran@fbm.com
                                      kmclorg@fbm.com
                                      dmsilva@fbm.com
                                      kbalkoski@fbm.com

                                      ELIZABETH J. CABRASER
                                      RICHARD M. HEIMANN
                                      KEVIN R. BUDNER
                                      ANNIE M. WANLESS
                                      NABILA M. ABDALLAH
                                      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                      275 Battery Street, 29th Floor
                                      San Francisco, California 94111
                                      (415) 956-1000 Telephone
                                      ecabraser@lchb.com
                                      rheimann@lchb.com
                                      kbudner@lchb.com
                                      awanless@lchb.com
                                      nabdallah@lchb.com

                                      ERWIN CHEMERINSKY
                                      CLAUDIA POLSKY
                                      U.C. BERKELEY SCHOOL OF LAW
                                      215 Boalt Hall
                                      Berkeley, California 94720-7200

17        RESPONSE TO MOTION FOR PANEL
                                                     RECONSIDERATION OR RECONSIDERATION
                                                     EN BANC – No. 25-4249

(510) 642-6483 Telephone
(619) 238-1126 Facsimile
echemerinsky@law.berkeley.edu
cpolsky@law.berkeley.edu

*Attorneys for Plaintiffs-Appellees*

18

RESPONSE TO MOTION FOR PANEL
RECONSIDERATION OR RECONSIDERATION
EN BANC – No. 25-4249

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** _____25-4249_____

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[X] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and contains the following **number of words: 3799**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[ ]  In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** _____*s/Donald E. Sobelman*_____ **Date** September 26, 2025
*(use "*s/[typed name]*" to sign electronically-filed documents)*